# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JAYME KREVS,**

**Plaintiff,**

**v.**                                     **Case No. 18-CV-1742**

**ANDREW M. SAUL,**

**Defendant.**

## DECISION AND ORDER

**Procedural History**

Jayme Krevs alleges he has been disabled since September 15, 2015. After the Appeals Council declined to review the decision of an administrative law judge (ALJ) denying his application, Krevs filed the present action. (ECF No. 14 at 1.)

The ALJ concluded that Krevs suffered from the following severe impairments: "degenerative disc disease (lumbar, thoracic, and cervical), dysfunction major joints including status post shoulder injury/surgery, degenerative joint disease of the elbow, depression, migraine(s), personality disorder." (Tr. 73.) Despite these impairments, the ALJ concluded that Krevs had the following residual functional capacity:

> to perform light work as deemed in 20 CFR 404.1567(b) except allowing
> this person to sit or stand alternatively at will, provided that this person is

not off task more than 10% of the work period. Limited to frequent push/pull. The individual can occasionally stoop, frequently balance, crouch, kneel, and climb ramps and stairs, but should never crawl or climb ladders, ropes or scaffolds. The claimant can frequently reach bilaterally, occasionally reach overhead bilaterally, frequently handle bilaterally, frequently finger bilaterally and frequently feel bilaterally. The individual can have no exposure to dangerous moving machinery or to unprotected heights. The individual is limited to understanding, carrying out and remembering no more than simple instructions. The individual can perform simple, routine tasks. The individual can work in an environment free of fast-paced production requirements. The individual can perform work involving only simple, work-related decisions and work involving few, if any, workplace changes. The claimant can have no interaction with the public, and occasional interaction with coworkers and with supervisors.

(Tr. 76.) Based on the testimony of a vocational expert, the ALJ concluded that Krevs was capable of working at various jobs, including "inspector hand packer," "electrical accessories assembler," and "industrial bagger," and therefore was not disabled. (Tr. 88.)

Krevs argues that the ALJ erred in various respects, particularly with regard to the ALJ's consideration of Krevs's migraines, which Krevs describes as "his primary impairment and the primary reason he has lost numerous jobs in the past." (ECF No. 14 at 12.)

**Standard of Review**

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019)

(citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

**Analysis**

1. **Migraines**

Migraines present a particularly difficult question in the context of disability claims. The impairment itself is not objectively verifiable, much less the frequency and severity of the resulting symptoms. The impairment also tends to result in vastly variable functioning; when not experiencing symptoms a claimant may be fully functional, but he may be completely debilitated when suffering a migraine. Thus, to assess whether a claimant's migraines preclude substantial gainful activity, it is

necessary to assess both how often the claimant suffers migraines and how severe those migraines are.

SSR 16-3p provides the framework for assessing the severity of a claimant's symptoms. It sets forth a two-step process. First, the ALJ must "determine whether the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms." Second, the ALJ must "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities …." To "evaluate the intensity, persistence, and limiting effects of an individual's symptoms," the ALJ must consider all relevant evidence, but particularly,

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

Regarding the severity of Krevs's symptoms in general, the ALJ said:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 77.)

Courts have repeatedly criticized the use of this "meaningless boilerplate," but its use is not error if the ALJ supports his conclusion with "specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). The Commissioner argues that the ALJ provided specific reasons. The Commissioner points to the ALJ's observations that most objective examinations were normal, Krevs testified that his treatments were helpful, the neuropsychological examination results were not valid, no medical source said Krevs's migraines resulted in any impairment beyond those found by the ALJ, and Krevs's activities of daily living were inconsistent with his limitations. (ECF No. 19 at 6-7 (citing Tr. 81, 82, 83, 85.)

Although the ALJ's decision contains each of these points, the ALJ generally offered these observations only as part of an overall summary of the medical evidence rather than as reasons for discounting the severity of Krevs's symptoms. An ALJ does not comply with his obligation to provide "specific reasons for the weight given to the individual's symptoms," SSR 16-3p, by merely recounting the medical evidence and stating a conclusion. The ALJ must connect that medical evidence to his conclusions, or as courts regularly phrase this obligation, an ALJ "must build a logical bridge from the

evidence to his conclusion." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). For the Commissioner to now attempt to defend the ALJ's decision by pointing to reasons not offered by the ALJ offends the *Chenery* rule. *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943)).

The ALJ sufficiently connected only the following facts to his conclusion that Krevs's migraine symptoms were not as severe as he alleged: (1) an examining source concluded that Krevs was exaggerating the severity of his symptoms (Tr. 81); "no medical source has listed work-related limitations related to the claimant's migraines" (Tr. 82); and Krevs's "activities of daily living" are "largely intact." (Tr. 83).

Debra Anderson, PhD, evaluated Krevs on September 14, 2016, for purposes of a neuropsychological consultation to assess his mental impairments. She concluded that Krevs was exaggerating his impairments by endorsing symptoms at a rate that would not be expected for a person his age who had not been already diagnosed with dementia. (Tr. 699.) She also concluded that much of the psychological testing was invalid "due to a highly exaggerated negative response set." (Tr. 704.)

A medical expert's conclusion that objective testing indicated an "overendorsement" (Tr. 699) of symptoms is certainly relevant to an ALJ's assessment of the severity of those symptoms. However, Anderson's assessment was not directed at Krevs's migraines but rather at his general mental functioning. Never did Anderson suggest that her testing indicated that Krevs did not suffer migraines of the frequency

and severity he alleged. To the contrary, Anderson specifically stated, "His migraines are likely to be a significant impediment to … work." (Tr. 704.) Objective evidence that Krevs's exaggerated the severity of one impairment might tend to suggest a propensity to exaggerate all of his symptoms. However, "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p.

The fact that no medical source found limitations related to Krevs's migraines is an empty observation given that no one who treated Krevs for migraines was asked to opine on his residual functional capacity. And although Krevs's daily living activities are an appropriate consideration in assessing the severity of his symptoms, *see* SSR 16-3p, the ALJ's assessment of Krevs's daily living activities underlies the central weakness in his evaluation of Krevs's symptoms. Activities such as personal care, assisting in the care of his children, household chores, walking, driving, shopping, using a computer, handling finances, using a computer, or playing games may be limited to times when Krevs is not suffering from migraines, or performed in a limited fashion despite his migraines. Nothing in the ALJ's decision suggests he concluded otherwise.

What is crucially missing from the ALJ's assessment of Krevs's migraine symptoms is any evaluation of the "duration, frequency, and intensity" of those migraines. The ALJ stated that he accounted for Krevs's migraines by limiting him to jobs that allowed him to be off-task up to ten percent of the day. (Tr. 84.) But the ALJ did not explain how he concluded that allowing Krevs to be off task ten percent of the

day would sufficiently accommodate the effects of his migraines. Aside from the fact that ten percent off-task is the line where vocational experts generally find that an impairment will preclude work, there is no indication as to how the ALJ arrived at the ten percent figure.

The nature of the ten percent limitation is unclear. Is it the ALJ's conclusion that Krevs's migraines may incapacitate him for up to 48 minutes of a workday—that is, ten percent of a normal eight-hour workday? Or has the ALJ rejected the evidence that Krevs is periodically incapacitated by migraines and, thus, could continue to work despite his migraines and other cognitive impairments, but at a ten percent slower rate? Krevs testified that his migraines might incapacitate him for days at a time. For example, he testified that the week before the hearing he suffered migraines so severe that he had to be hospitalized for two days because of the severe vomiting that resulted. (Tr. 166.) The ALJ failed to offer a sufficient reason to discount this and similar evidence.

Neither the examining source's opinion that Krevs exaggerated his mental impairments, the absence of a medical source finding work-related limitations regarding his migraines, nor Krevs's activities of daily living, necessarily undercut Krevs's testimony and other evidence that he would suffer periodic debilitating migraines. Because absences of more than once a month would preclude work (Tr. 181), the failure to address this evidence was material.

## 2. Concentration, Persistence, and Pace

The ALJ gave no weight to the opinion of psychological consultative examiner Karen J. Berte, PhD, who concluded that Krevs may be moderately to markedly affected in his capacity to maintain work pace. (Tr. 85.) The ALJ explained, "Clearly, this is based upon the claimant's / Ms. Krev's [sic] statements as to his alleged abilities, and not based upon an objective assessment and/or rationale as to the claimant's capabilities." (Tr. 85.)

The ALJ similarly rejected the opinion of psychological consultative examiner Darrell L. Hischke, PhD, insofar as Hischke found that Krevs had a "moderate-to-marked limitation with respect to his ability concentrate, persist and maintain pace." (Tr. 85.) The ALJ stated he rejected this opinion because he found a moderate-to-marked limitation was inconsistent with the record as a whole. Moreover, Hischke did not have the benefit of reviewing the entire record, notably an exam performed on March 9, 2016, that the ALJ concluded was inconsistent with a moderate-to-marked limitation.

Krevs argues that the ALJ erred in rejecting these opinions. He argues that it was legally and factually incorrect for the ALJ to discount Berte's opinion on the basis that it was a result of Krevs's subjective complaints. And he contends that the ALJ erred with respect to Hischke's opinion because the ALJ failed to consider Krevs's variable functioning. Thus, just because Krevs was able to perform well on a single test or can

otherwise attend to tasks at certain times does not mean he does not have marked or moderate limitations in memory when suffering a migraine.

The court agrees that remand is necessary to permit the ALJ to reconsider the weight he afforded to Berte's opinion. It is true that a medical expert's opinion that merely parrots the subjective limitations of a patient may be appropriately discounted in much the same way that an ALJ may assess the severity of a claimant's symptoms. *See Brown v. Barnhart*, 298 F. Supp. 2d 773, 793 (E.D. Wis. 2004); *cf. White v. Barnhart*, 415 F.3d 654, 659 (7th Cir. 2005) (discounting medical opinion because it was based on only the plaintiff's subjective complaints, which were not credible). However, absent compliance with the rules applicable to assessing the severity of a claimant's symptoms, *see, e.g.*, SSR 16-3p, it is error for an ALJ to disregard a medical expert's opinion solely because it was based on the patient's subjective complaints. *See Brown v. Barnhart*, 298 F. Supp. 2d 773, 793 (E.D. Wis. 2004). "A 'patient's report of complaints, or history, is an essential diagnostic tool.'" *Id.* (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003)). As noted above, the ALJ failed to comply with SSR 16-3p in assessing the severity of Krevs's symptoms. Consequently, the court must conclude that the ALJ erred when he disregarded Berte's opinion simply because it was based on Krevs's self-reported symptoms.

The court also agrees with Krevs that it was factually incorrect for the ALJ to say that Berte's opinion was based entirely on Krevs's subjective reports rather than on

10

objective testing. Her report contains a heading, "Concentration, Persistence, and Pace," followed by a recitation of Krevs's self-reported activities and limitations. But a separate portion of the report, with the heading "Concentration," details a "serial threes" test that included multiple errors by Krevs.

However, the court does not find that the ALJ's assessment of Hischke's opinion would independently require remand. The court agrees with the Commissioner that Krevs's argument amounts merely to a contention that the ALJ should have reached a different conclusion based largely on evidence of Krevs self-reported symptoms. Nonetheless, because the ALJ erred in his assessment of Krevs's symptoms, it may be necessary on remand to also reassess the weight afforded Hischke's opinion.

**Conclusion**

The ALJ accepted that Krevs suffered from migraines but found that he exaggerated the severity of his migraines. Thus, the ALJ found that this impairment affected Krevs's ability to work only in that he may be off-task for up to ten percent of the workday. However, the ALJ failed to fully comply with SSR 16-3p in assessing the severity of Krevs's migraines. Moreover, the ALJ failed to explain how limiting Krevs to jobs that would tolerate him being off-task for up to ten-percent of the day would account for his migraines. This error in assessing the severity of Krevs's migraines affected the ALJ's assessment of Berte's and Hischke's opinions.

Krevs asks that the court directly award benefits rather than remand the matter for rehearing. "[A]n award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability." *Israel v. Colvin*, 840 F.3d 432, 442 (7th Cir. 2016). The court finds that all the factual issues have not been resolved. For example, questions exist as to the frequency and severity of Krevs's migraines.

Finally, having concluded that remand is otherwise required, it is unnecessary to assess whether Krevs's newly-presented evidence independently merits remand.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **reversed**, and pursuant to § 405(g), sentence four, this matter is **remanded** for further proceedings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 6th day of January, 2020.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge